## SELLERS v. THE STATE.

1. Where two persons interested in a crop raised by one of them upon land of the other, or of the latter's wife, differ as to their respective shares in such crop, and the tenant or cropper by whom it was raised peaceably enters upon the land for the purpose of gathering and removing that proportion of the crop which he in good faith claims as his own, and the landlord, to prevent this being done, deliberately kills the tenant or cropper, or his assistant, the killing is murder. Even if the tenant, or cropper, was mistaken as to the amount of his interest in the crop and intended to remove more than his lawful share, this alone would not, in legal contemplation, be sufficient to justify the excitement of passion on the part of the slayer, so as to reduce the homicide to voluntary manslaughter.

2. In view of the undisputed facts of this case, which fully warranted a conviction of murder, the requests to charge were properly refused, and the charges complained of were substantially correct.

Submitted October 8,—Decided October 19, 1896.

Indictment for murder.    Before Judge Spence.    Pierce superior court.    May term, 1896.

*E. D. Graham, J. I. Summerall* and *Estes & Walker,* for plaintiff in error.    *J. M. Terrell, attorney-general,* and *W. G. Brantley, solicitor-general,* contra.

LUMPKIN, Justice.

The plaintiff in error, D. F. Sellers, was convicted of murdering John P. Dixon, and sentenced to imprisonment in the penitentiary for life. The evidence shows that Mrs. Sellers, the wife of the accused, was the owner of a field on which Joseph Dixon, a brother of the deceased, had, under a contract with Sellers, cultivated and raised a crop of corn. It is not absolutely clear whether the relation between Sellers and Joseph Dixon was that of landlord and tenant, or landlord and cropper. It is, however, immaterial to ascertain what may have been the precise truth as to this matter. A dispute arose between Sellers and Joseph Dixon over a division of the fodder raised on the field in question.    It is

44

not essential to set forth the particulars of this dispute, further than to say that Joseph Dixon, evidently in good faith, claimed the right to remove from the land two thirds of the fodder, while Sellers contended that Joseph Dixon's share was only one half.    On the day of the homicide, Joseph Dixon entered the field, accompanied by John P. Dixon and others, for the purpose of removing two thirds of the fodder.    While they were engaged in so doing, Sellers appeared on the scene and shot and killed John P. Dixon with a rifle, having no reason or excuse for so doing, other than the fact that the deceased was assisting his brother in violating what Sellers regarded as the contract rights of himself, or of his wife, in the premises.

The accused introduced a considerable amount of testimony tending to show that he was afflicted with a disease which at times affected his mind to a greater or less extent, and that in consequence he was more than ordinarily susceptible to the excitement of passion; but it was not contended in his behalf that he was mentally incapable of committing crime, or legally irresponsible for the homicide. The State introduced in rebuttal much evidence tending to show that the accused had no mental infirmity, but was in all respects a thoroughly rational person.    It was practically conceded at the trial that the accused was guilty of some offense, and the chief effort of his counsel seems to have been to have the killing reduced to voluntary manslaughter.    With this end in view, the court was requested to charge, in substance, that if under the contract Joseph Dixon was entitled to remove only one half of the crop of fodder, and was seeking to carry away two thirds of the same, and the jury should believe that this "provocation" and the surrounding circumstances were sufficient to justify the excitement of passion, they should find the accused guilty of voluntary manslaughter, and not murder; and that in determining the degree of the homicide, they might take into consideration the mental condition of the accused

at the time of the killing, with a view to ascertaining whether or not he acted with malice aforethought, or upon a sudden impulse of passion. These requests were refused; and the judge, on the contrary, in effect instructed the jury that such "provocation" as that above indicated would not, in legal contemplation, be sufficient to justify the excitement of passion on the part of the slayer, so as to reduce the homicide to the grade of voluntary manslaughter.

Under the facts as they appear in the record, no error was committed, either in refusing to charge as requested, or in charging as stated. Civil disputes of this nature cannot be settled with deadly weapons. The deceased, as the assistant of his brother, had an undoubted right to enter the field upon which the crop was raised; and even though the latter may have been mistaken as to the proportion of the fodder to which he was lawfully entitled, neither he nor the brother who was killed were in any sense trespassers. The law will not for a moment tolerate the idea that their conduct should be treated as a cause for exciting in the breast of Sellers an outbreak of passion supposed to be irresistible. To hold that a mere difference of opinion between parties as to their respective shares in a crop in which they are jointly interested, accompanied by peaceable acts only on the part of one of them in endeavoring to obtain what he honestly believed to be his legal rights, would be sufficient to justify the excitement of that degree of passion in the other which would make the killing of his adversary, under such circumstances, manslaughter, would be establishing an unheard-of and exceedingly dangerous precedent. The proposition is too plain for serious discussion. The effect of promulgating such a doctrine would doubtless diminish to an enormous extent the amount of business standing upon the civil dockets of our courts, but the increase in the criminal business would be simply terrible. If, in a case like this, the tenant or cropper had slain the

landlord for no better reason than that set up by the accused in mitigation of his offense, the killing would as plainly have been murder as it was in the present instance. The conviction of murder was unquestionably right; and even if the jury had failed to recommend that the accused be imprisoned for life, this court would have had neither the power nor the disposition to disturb their finding.

*Judgment affirmed.*